**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 25-1935, 25-1969
_____

CHRISTOPHER M. WARMAN; TRUST FOR FAMILY OF CHRISTOPHER
WARMAN; CHOCOLATE MOONSHINE, LLC,
Appellants and Cross-Appellees

v.

LOCAL YOKELS FUDGE, LLC; CHRISTINE FALVO; CHARLES BRIAN GRIFFIN;
DONALD KONIECZNY; CM CHOCOLATIER, LLC,
Appellees and Cross-Appellants
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:19-cv-01224)
Magistrate Judge:  Honorable Patricia L. Dodge
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 27, 2026
_____

Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, ROTH and RENDELL, <u>Circuit</u> <u>Judges</u>

(Opinion Filed: July 29, 2026)

_____

OPINION[*]

_____

CHAGARES, <u>Chief</u> <u>Judge</u>.

This appeal and cross-appeal arise from intellectual property litigation between competitors in the fudge industry. Plaintiffs Christopher M. Warman, the Trust for Family of Christopher Warman (the "Trust"), and Chocolate Moonshine, LLC ("Chocolate Moonshine") appeal the District Court's award of attorneys' fees to defendants Local Yokels Fudge, LLC ("Local Yokels"), Christine Falvo, Charles Brian Griffin, Donald Konieczny, and CM Chocolatier, LLC ("CM Chocolatier") with respect to the plaintiffs' trademark and copyright infringement claims. The defendants cross-appeal the District Court's order denying their renewed motion for judgment as a matter of law after a jury returned a verdict for the plaintiffs on their trade secret misappropriation claim. For the following reasons, we will affirm.

I.[1]

Over the course of five years, Warman developed a fudge recipe (the "Recipe"). Warman produced fudge using the Recipe and sold it under the "Chocolate Moonshine Co." trademark and brand. This appeal involves three intellectual property disputes related to Warman's fudge business: (1) infringement of the "Chocolate Moonshine Co."

_____

[*] This disposition is not an opinion of the full Court and, pursuant to 3d Cir. I.O.P. 5.7, does not constitute binding precedent.

[1] We write primarily for the parties, so we recite only the facts essential to our decision.

2

trademark; (2) unauthorized use of copyrighted photographs; and (3) dissemination of the Recipe, a trade secret.

The plaintiffs' trademark infringement claims stem from Griffin's use of the "Chocolate Moonshine Co." trademark. Warman's son, Christopher Warman Jr. ("Warman Jr."), filed an application in 2014 with the United States Patent and Trademark Office ("PTO") to register the "Chocolate Moonshine Co." trademark. In the application, Warman Jr. represented that he was the owner of the trademark. But, in fact, his father owned the trademark. Wanting to keep the trademark away from his ex-wife, Warman had given his son permission to file the application in Warman Jr.'s name. Warman Jr. subsequently used the "Chocolate Moonshine Co." trademark as part of CM Chocolatier, a company that he owned with Griffin. A few years later, Warman Jr. executed a license agreement that gave Chocolate Moonshine, LLC — his father's fudge company — the power to enforce the trademark. Griffin, however, was unaware of this agreement.

Griffin also used twelve copyrighted photographs, forming the basis for the plaintiffs' copyright infringement claims. Warman Jr. hired a photographer to take photographs of fudge to be used for marketing purposes. After receiving the photographs, Warman Jr. permitted Griffin to use the photos on CM Chocolatier's website. Griffin used the photographs from 2017 to 2019, during which time no one objected. In March 2020, the photographer assigned the photographs to the Trust, and the Trust registered the copyright shortly thereafter.

The plaintiffs' trade secret misappropriation claims result from the defendants' unauthorized use of the Recipe. Having spent five years developing the Recipe, Warman

3

adopted several measures to keep it secret. Warman nevertheless gave Falvo, his then-wife, a license to use the Recipe on the condition that she kept it secret. Falvo disclosed the Recipe to Local Yokels and Konieczny, who then used the Recipe for their own business purposes.

Based on the above events, the plaintiffs filed suit against the defendants, alleging, as relevant here, claims of trademark infringement, copyright infringement, and trade secret misappropriation. The District Court granted summary judgment in favor of the defendants with respect to the trademark and copyright infringement claims.[2] After finding that Warman Jr. procured the "Chocolate Moonshine Co." trademark by fraud, the District Court concluded that the plaintiffs could no longer pursue their trademark infringement claims. As for the copyright infringement claims, the District Court held that Warman Jr. — a licensed user of the photographs — had, in turn, authorized Griffin and CM Chocolatier to use the photographs. The court also noted the lack of evidence showing that Falvo, Local Yokels, or Konieczny had provided the photos to Griffin or otherwise induced copyright infringement.

The trade secret misappropriation claims proceeded to trial. During trial, the defendants moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), arguing that the plaintiffs had failed to prove that the Recipe had independent economic value. The District Court denied the defendants' motion, and the jury later

---

[2] With the parties' consent, Magistrate Judge Patricia L. Dodge conducted the proceedings in this matter. We refer to the Magistrate Judge as the District Court throughout this opinion.

returned a verdict in favor of the plaintiffs.

The defendants filed two post-trial motions that are relevant here: a renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) and a motion for attorneys' fees under Federal Rule of Civil Procedure 54. The District Court denied the Rule 50(b) motion, holding that there was sufficient evidence from which a jury reasonably could conclude that the Recipe derives independent economic value from being kept secret.

The District Court granted the defendants' motion for attorneys' fees, awarding fees for both the trademark and copyright infringement claims. With respect to the trademark infringement claims, the District Court concluded that the case was exceptional — therefore warranting fees — because the plaintiffs had litigated in an unreasonable manner. More specifically, the court noted how the plaintiffs not only based their claims on a fraudulently procured trademark but also continued to pursue those claims after learning that the trademark was void ab initio. As for the copyright infringement claims, the District Court awarded fees due to the "[d]efendants' degree of success on the copyright infringement claims, the objective unreasonableness of [those] claims and Warman's apparent improper motivation in bringing [those] claims." Appendix ("App.") 15. The plaintiffs timely appealed the District Court's order awarding attorneys' fees, and the defendants timely cross-appealed the District Court's order denying their renewed motion for judgment as a matter of law.[3]

---

[3] In their notice of appeal, the defendants also challenge the District Court's order denying their motion for a new trial. Yet the defendants' appellate briefing is focused

5

II.[4]

The plaintiffs challenge the District Court's fee award with respect to the trademark and copyright infringement claims. We review awards of attorneys' fees for abuse of discretion. See Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 173 (3d Cir. 2005) (attorneys' fees under Lanham Act); Leonard v. Stemtech Int'l, Inc., 834 F.3d 376, 403 (3d Cir. 2016) (attorneys' fees under Copyright Act). Because the District Court did not abuse its discretion by awarding fees on either claim, we will affirm.

A.

Under the Lanham Act, a court may award "reasonable attorney fees to the prevailing party" in "exceptional cases." 15 U.S.C. § 1117(a). A case is exceptional for purposes of the Lanham Act when "(a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'" Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 315 (3d Cir. 2014) (quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014)). On appeal, the plaintiffs challenge the District Court's conclusion that they litigated the trademark claims in an unreasonable manner.

The plaintiffs first contend that the District Court abused its discretion by basing its fee award, in part, on Warman's fraudulent procurement of the trademark. The plaintiffs claim that the trademark was not procured by fraud because Warman Jr.'s

_____

solely on the denial of their Rule 50(b) motion. The defendants have therefore forfeited any arguments with respect to their motion for a new trial.

[4] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

application stemmed from a mistake or misunderstanding, not an intent to deceive. To the extent that the plaintiffs directly challenge the District Court's summary judgment finding that Warman Jr. intended to deceive the PTO, we do not perceive any error. It was consistent with the sound exercise of discretion for the District Court to conclude that the plaintiffs litigated in an unreasonable manner by asserting trademark infringement claims based on a fraudulently procured trademark.

The plaintiffs also contend that they did not litigate unreasonably because at the time of filing the claims, they did not know that the trademark was void ab initio. They concede, however, that they became aware that the trademark was void as of July 21, 2022, when Gwen Acker Wood entered her appearance as counsel. The District Court noted that Acker Wood represented the plaintiffs during summary judgment and that the plaintiffs' brief in opposition to summary judgment "fully addressed the contention that the trademark was obtained by fraud on the PTO." App. 12. The District Court thus found that the plaintiffs continued to litigate the trademark claims through summary judgment, even after learning that the mark was void. We see no abuse of discretion in the District Court's decision to award attorneys' fees based on this unreasonable litigation conduct.

B.

The award of attorneys' fees under the Copyright Act is discretionary. See 17 U.S.C. § 505; Leonard, 834 F.3d at 403. When determining whether to award fees, courts consider nonexclusive factors including "frivolousness, motivation, objective unreasonableness . . . and the need in particular circumstances to advance considerations

7

of compensation and deterrence." Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994) (quoting Lieb v. Topstone Indus., Inc., 788 F.2d 151, 156 (3d Cir. 1986)). Courts should place substantial, but not controlling, weight on the objective unreasonableness factor. See Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 199–200, 208 (2016). Yet courts must still "give due consideration to all other circumstances relevant to granting fees." Id. at 200.

The plaintiffs contend that, in copyright cases, courts may not award fees when there is a "proper, factual basis for concluding that the filing of the suit was 'objectively reasonable.'" Pls.' Br. 40 (quoting Leonard, 834 F.3d at 403). That proposition is inconsistent with existing law. The Supreme Court's decision in Kirtsaeng makes clear that a district court "retains discretion" to award attorneys' fees in a copyright case "even when the losing party advanced a reasonable claim or defense." 579 U.S. at 200. For example, the Court noted that "a court may order fee-shifting because of a party's litigation misconduct, whatever the reasonableness of his claims or defenses." Id. at 209. Accordingly, even if the plaintiffs' copyright claims were objectively reasonable, the District Court could still award attorneys' fees to the defendants.

Here, the District Court considered the relevant Fogarty factors when deciding whether to award fees. The District Court found that the "[p]laintiffs had no support for their copyright infringement claims but pursued them anyway." App. 15. The court also noted how Warman had an "apparent improper motivation in bringing the[] [copyright infringement] claims." App. 15. The District Court's decision to award fees was thus consistent with the sound exercise of discretion.

8

Discerning no abuse of discretion, we will affirm the District Court's order granting the defendants attorneys' fees on the trademark and copyright infringement claims.

III.

The defendants cross-appeal the District Court's order denying their renewed motion for judgment as a matter of law with respect to the trade secret misappropriation claims. We exercise plenary review of an order denying a motion for judgment as a matter of law and apply the same standard as the District Court. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993). Judgment as a matter of law may be granted under Federal Rule of Civil Procedure 50(b) "only if, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." In re Lemington Home for the Aged, 777 F.3d 620, 626 (3d Cir. 2015) (quotation omitted). Because there was sufficient evidence from which a jury could reasonably find that the Recipe — the alleged trade secret at issue — derives independent economic value from being kept secret, we will affirm the District Court's judgment.

The plaintiffs asserted trade secret misappropriation claims under both the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 Pa. Cons. Stat. §§ 5301–5308. Because the DTSA and PUTSA are practically identical and protect the same type of information, we will analyze them together. See NRA Grp., LLC v. Durenleau, 154 F.4th 153, 170 (3d Cir. 2025). Both statutes define a "trade secret" as information that (1) the owner has taken

9

reasonable measures to keep secret and (2) "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable" through "proper means" by other persons "who can obtain economic value from" the information's "disclosure or use." 18 U.S.C. § 1839(3); 12 Pa. Cons. Stat. § 5302. On appeal, the defendants challenge the second prong, contending that the plaintiffs did not introduce evidence at trial establishing that the Recipe derives independent economic value from remaining a secret.

A review of the trial record reveals, however, that there was sufficient evidence from which a jury could reasonably conclude that the Recipe had economic value from its continued secrecy. For example, Warman testified about how the Recipe is superior to that of his competitors in terms of health, taste, and durability. Warman also testified about the commercial success of the Recipe, which included the production and sale of seven million pounds of fudge; the sale of his fudge at several large retail stores; the sale of hundreds of thousands of gift boxes of fudge on QVC; and the sale of $187,000 worth of fudge in a 90-second appearance on Good Morning America. This evidence provides a sufficient basis for a reasonable jury to conclude that the Recipe provided the plaintiffs with economic value from being kept secret.

In response to this evidence, the defendants assert that Warman's self-serving testimony is insufficient to support a finding that the Recipe has independent economic value. But when we evaluate whether there is enough evidence from which a jury could reasonably find liability, we may not determine the credibility of witnesses. Lightning Lube, 4 F.3d at 1166. It was up to the jury to evaluate whether Warman was credible

10

and, if so, whether his testimony established that the Recipe derived economic value from its secrecy. Because there is sufficient record evidence from which a jury could find that the Recipe had independent economic value, we will affirm the District Court's judgment.

## IV.

For the foregoing reasons, we will affirm the District Court's orders with respect to the award of attorneys' fees and the defendants' renewed motion for judgment as a matter of law.

Warman v. Local Yokels Fudge, LLC

Nos. 25-1935, 25-1969

_____

ROTH, *Circuit Judge*, concurring in part[1] and dissenting in part.

I respectfully depart from my colleagues because I believe that Plaintiffs failed to submit sufficient evidence that they derived independent economic value from the Recipe's secrecy. In my view, the District Court erroneously conflated value gained from the information's secrecy with the value of the information itself. The former warrants trade secret protection; the latter does not. Unfortunately, we have left district courts with minimal guidance on how to properly analyze whether a plaintiff has established the requisite independent economic value. This case highlights the consequences of such lack of guidance, as the plaintiff's subjective testimony should have been insufficient to survive Defendant's motion for judgment as a matter of law.

The District Court's flawed analysis stems from two incorrect assumptions: (1) the Recipe inherently derives value by nature of its secrecy; and (2) that the time, effort, and money Warman spent developing the Recipe are sufficient to establish the requisite independent economic value. I would agree with my colleagues that Plaintiffs submitted ample evidence concerning *the Recipe's* value. During trial, Warman testified to the time he spent developing the Recipe, his efforts to develop the Recipe, his heightened production as a result of the Recipe, and the avenues and mediums over which he sold fudge made using the Recipe. The District Court believed this testimony was sufficient

_____

[1] I join Sections I and II of the majority opinion.

1

evidence from which a jury could conclude that the Recipe derived value from its secrecy because the Recipe had economic value.

Certainly, the District Court's conclusion would have been correct under common law.[2] But today, courts are bound by the statutory framework of the DTSA and PUTSA. Those statutes provide that plaintiffs seeking trade secret protection must establish that the plaintiffs "**derive[] independent economic value**, . . . **from** [the information] not being generally known to, and not being readily ascertainable" by another person "who can obtain economic value from" its disclosure or use.[3] Although neither the DTSA nor the PUTSA define the phrase "independent economic value," the statutes' use of "derive" and "from" show that causation is the cornerstone of establishing independent economic value. Information does not warrant trade secret protection merely because it has value; rather, its value must be caused by its secrecy.[4]

Under the DTSA and PUTSA's statutory schemes, the District Court should have construed Warman's subjective testimony related to the development of the Recipe as a mere "scintilla of evidence" about whether Plaintiffs derived independent economic value

---

[2] *See SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1256 (3d Cir. 1985) ("Some factors to be considered in determining whether given information is a trade secret are: (1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the value of the information to the owner and to his competitors; (5) the amount of effort or money expended by the owner in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.") (citing Restatement (First) of Torts § 757 cmt. b (1939)).

[3] 18 U.S.C. § 1839(3) (emphasis added); 12 Pa. Cons. Stat. § 5302.

[4] *See* Camilla A. Hrdy, *The Value in Secrecy*, 91 Fordham L. Rev. 557, 595–96 (2022).

2

from its secrecy.[5]  But a "scintilla of evidence" "is not enough to sustain a verdict of liability" and overcome a motion for judgment as a matter of law.[6]  Although I believe we need not prescribe an exhaustive list of sufficient evidence *for the instant case*, Plaintiffs could have offered, *inter alia*:  (a) expert testimony related to the value of the Recipe's secrecy within the fudge industry; (b) expert testimony related to whether competitors are actually searching for, or trying to duplicate, the Recipe; (c) testimony from current or former employees about attempts to duplicate the Recipe; (d) internal market research related to the risk of the Recipe becoming public; (e) offers to buy, purchase, or lease the Recipe; and (f) supplemental testimony related to the value of the time, money, and efforts that went into developing the Recipe.  Here, Warman's limited, subjective testimony falls short of what the DTSA and PUTSA require.

Recognizing that the independent economic value requirement "has been the subject of less litigation than the secrecy or reasonable efforts requirements[,]"[7] I encourage courts—both within our Circuit and beyond—to take a closer look at whether an owner actually derives value from secrecy.  As one commentator noted, "[v]alue must come from secrecy, and disclosure must threaten to destroy both secrecy and value.  If this link is not enforced, trade secret law serves a distinct purpose from protecting the value that lies in secrecy."[8]

In the case at hand, Plaintiffs failed to provide the jury with a sufficient link.

---

[5] *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).
[6] *Id.*
[7] *See* 1 Milgrim on Trade Secrets § 1.07A (2026).
[8] Hrdy, *supra* note 4, at 575.

3

Accordingly, I would have reversed the District Court's denial of Defendants' motion for judgment as a matter of law.